UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JANE DOE | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | Cause No. 1:21-cv-00559 |
| TEXAS STATE UNIVERSITY | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT
## AND JURY DEMAND

TO THE HONORABLE JUDGE OF SAID COURT:

This case arises from Defendant's deliberate indifference to warn or protect Plaintiff from a known sexual predator. This action alleges violations of Title IX and, there under, Clery Act. In addition, action alleges additional pendent claims arising under state law, including breach of contract and negligence. In support thereof, Plaintiff would show the Court as follows:

# I.

## PARTIES

1.      Plaintiff Jane Doe is a female.  At all material times Jane Doe was living in the County of Hays, State of Texas.  At the time of events complained of herein, Jane Doe was a freshman student attending Texas State University.

2.      Defendant, Texas State University, is an educational institution in the County of Hays, State of Texas.  Texas State University may be served through its President, Denise M. Trauth at 601 University Drive, San Marcos, Texas 78666.  During all material times, Texas State University received federal funding for its academic programs and activities.

# II.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

4.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State

Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

5.     Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.  This action is brought pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth Amendment to the United States Constitution, made applicable to Defendants through the Fourteenth Amendment to the United States Constitution.

6.     Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state law including breach of contract and negligence.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all Parties reside or resided in this district and the events giving rise to the claims occurred in this district.

## III.

## APPLICABLE LAW

8.      Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §

168l(a), states that:

> "No person in the United States shall, on the basis of sex, be excluded
> from participation in, be denied the benefit of, or be subjected to
> discrimination under any education program or activity receiving Federal
> financial assistance .... "

9.      Title IX is implemented through the Code of Federal Regulations. See 34

C.F.R. Part 106. 19. 34 C.F.R. § 106.8(b) which provides:

> " ... A recipient shall adopt and publish grievance procedures providing
> for prompt and equitable resolution of student and employee complaints
> alleging any action which would be prohibited by this part."

10.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the

United States Supreme Court recognized that a recipient of federal educational funds

intentionally violates Title IX, and is subject to a private damages action, where the

recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

11.     In *Davis v. Monroe County Board. of Education*, 526 U.S. 629 (1999), the United

States Supreme Court extended the private damages action recognized in *Gebser* to

cases where the harasser is a student, rather than a teacher.

12.     *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

> a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and
> b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."

*Davis*, 526 U.S. at 1669-76.

13.     Title IX jurisprudence as well as Department of Education regulations have long recognized that a single event of rape constitutes harassment so severe, pervasive and objectively offensive that it deprives its victims of access to the educational opportunities provided by the school:

> "The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical.  Indeed, a single or isolated incident of sexual harassment may create a hostile environment if the incident is sufficiently severe.  For instance, a single instance of rape is sufficiently severe to create a hostile environment."

U.S. Department of Education, Office of Civil Rights, "Dear Colleague" Letter of April 4, 2011.

14.     Regardless, in the circumstances giving rise to the claims of this Plaintiff, resulting from deliberate indifference, has been allowed to continue at the Defendant University.

15.     Texas law provides protections for students and requires the exercise of reasonable care on the part of the University.

16.     Texas law provides for the protection of invitees from foreseeable criminal harm.

17.     Texas law also provides for a cause of action of breach of contract.  Plaintiff had and continue to have an educational contract with the Defendant University that included agreements and duties to provide adequately for their safety, to adequately and in compliance with law report instances of sexual assault and/or harassment the breach of which cause the damages claimed herein.

## IV.

## <u>FACTS</u>

18.     On September 28, 2019 Plaintiff was sexually and physically assaulted by Assailant 1 who was a Texas State University Student.  Assailant 2, an accomplice, was not a Texas State University Student but was visiting Assailant 1.  During the sexual assault of Jane Doe, Assailant 1 physically assaulted her by pulling her hair from her

scalp and putting his fingers in her mouth pulling it sideways and bruising her breasts. Both Assailant 1 and 2 sexually assaulted Jane Doe during this event.

19.    Assailant 1 was arrested by Texas State University Police on October 3, 2019, for a prior sexual assault of a different female. That prior sexual assault occurred on August 17, 2019 and was investigated by Texas State University Police until Assailant 1's arrest on October 3rd, 2019 Therefore, when Assailant 1 assaulted Jane Doe, the University had actual knowledge of the prior August 17 assault.  In addition, Assailant 1 was arrested (by Hays County Sheriff's Office) on August 29, 2019 for felony possession of a controlled substance.  A Texas State University tracking number was assigned to him at that time, putting the University on actual notice of Assailant 1's prior criminal conduct.

20.    With regard to Plaintiff's assault, the Texas State University's Title IX's coordinator Investigated Doe's assault and concluded Assailant 1 committed sexual violence against Doe.

21.    Assailant 1 appealed the finding and was unsuccessful.  The Texas State University's committee affirmed the finding, noting Assailant 1 lacked credibility and sustained his removal.

22.     Texas State University, at all times relevant to the assault on Jane Doe, knew of Assailant's prior criminal behavior of physical and sexual assault and felony drug possession.

23.     Assailant 1 was arrested and charged with the sexual assault of Jane Doe on October 21, 2019.

24.     Prior to this occasion Texas State University had a history of significantly underreporting the number of sexual assaults on its flagship campus.

25.     The Clery Act requires publicly funded universities to release annual reports detailing how often various crimes, including sexual assault are reported on or near campus.

26.     The criminal charges against Assailant 1 are currently pending.

27.     Assailant 1 was again arrested on January 21, 2020 in Montgomery County, Texas for possession of a controlled substance.

## A.     ALLEGATIONS

28.     Texas State University System Sexual Misconduct Policy and Procedures in effect at the time Jane Doe was physically and sexually assaulted provides:

> 4. Interim Measures. When an incident of sexual misconduct is reported, the component will consider interim measures while the incident is investigated and adjudicated.

4.13 Temporary Withdrawal or Suspension from the Component, in accordance with System Rules and Regulations. (TSUS Sexual Misconduct Policy Effective August 17, 2017).

29.     No Interim Measures were taken by the Component (University) following the first complaint against Assailant 1 for the sexual assault on August 17, 2019 and before the sexual assault of Jane Doe on September 28, 2019. Certainly, if the first sexual assault complaint was not deemed worthy of interim measures (removal from the University), then the sexual assault coupled with felony possession of controlled substance should have mandated that immediate action be taken to remove him from campus.

30.     The University's failure to follow its own sexual misconduct policy was a direct, producing and proximate cause of the physical and sexual assault of Jane Doe.

31.     The Texas State University Sexual Misconduct Policy and Procedures was approved on August 22, 2019 without changing the 2017 interim measures (removal) that could have been taken while the first assault was investigated and adjudicated.

32.     Texas State University Sexual Misconduct Policy and Procedures Amended in 2020 provides for Emergency Removal:

"3.8.4 Emergency Removal ... a Component may remove a Respondent from the Component's Education Program or Activity on an emergency basis, provided that the Component undertakes an individualized safety

and risk analysis, determines that an immediate threat to the physical health or safety of any student or other individual arising from the allegations of sexual harassment justifies removal, and provides the Respondent with notice and an opportunity to challenge the decision immediately following removal.  The removal challenge does not require a hearing and the burden is on the Respondent to show why the removal should be rescinded."

33.    It is clear that, the policies both before and after the physical and sexual assault of Jane Doe, were not followed. The University failed to follow its own written sexual misconduct policy by failing to remove Assailant 1 from the Component.

34.    The University failed to have or failed to follow policies and procedures in place which would have prompted or required them to take affirmative action and remove from campus a student like Assailant 1 who exhibits violent criminal behavior.

35.    The Defendant University failed to protect the Plaintiff from a known sexual predator of which they had either actual or constructive notice prior to the time that Doe was physically and sexually assaulted.

36.    The Defendant University created a heightened risk of sexual assault for other students, including Doe and acted with deliberate indifference by failing to remove Assailant 1 after becoming aware of his prior criminal/sexual assault conduct before his assault on Doe.

37.    At all material times, the Defendant University was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.* for its activities including financial aid and research grants among other sources.

38.    The Defendant University implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

39.    The Defendant University is responsible for providing the security of its students and guests which it does through "Public Safety," in effect a private police force.

40.    The Defendant University is responsible for the acts and omissions of its employees, agents, part-time student workers, tenants and police force.

41.    The Defendant University failed to provide a safe academic environment for the Plaintiff.

42.    At all times relevant to this Complaint, Defendant failed to protect Plaintiff, and others, as it negligently discharged its duty to provide safety to the students and guests of the University.

43.    As a direct and proximate result of the violations of her state and federal legal rights, Plaintiff has suffered and continue to suffer untold psychological damage,

profound emotional distress, permanent loss of standing in her community and damage to her reputation, and her future relationship have been negatively affected.

44.    Plaintiff has also been deprived of meaningful treatment, including medical and psychological support, as a result of Defendant's conduct and the resulting medical environment that they caused.

45.    Plaintiff has also been deprived of a normal college education due to Defendant's conduct and the resulting educational environment that they caused.

46.    Plaintiff has also been damaged by missed educational opportunities. Also, her future earning capabilities have been damaged by Defendant's conduct and the resulting hostile educational environment which they caused.

## B. ALLEGATIONS

47.    Jane Doe was enrolled at the University in August of 2019 as a nursing major and received financial aid assistance.

48.    Jane Doe resided at the University owned dormitory.

49.    September 28, 2019 Plaintiff was physically and sexually assaulted by Assailant 1 who was a Texas State University Student.  Assailant 2 an accomplice, was not a Texas State University Student but was visiting Assailant 1.

50.    Assailant 1 was arrested by Texas State University Police on October 3, 2019 for Sexual Assault of a different female that occurred on August 17, 2019, over a month prior to the assault on Jane Doe. The University had actual knowledge of the prior assault because they were the investigatory agency.  In addition, Assailant 1 was arrested (by Hays County Sheriff's Office) on August 29, 2019 for felony possession of a controlled substance.  A Texas State University tracking number was assigned to him at this time.

51.    With regards to Plaintiff's assault, the Texas State University's Title IX's coordinator Investigated Doe's assault and concluded Assailant 1 committed sexual violence against Doe.  Assailant 1 appealed the finding and was unsuccessful.  The Texas State University's committee affirmed the finding, noting Assailant 1 lacked credibility and sustained his removal.

52.    Texas State University at time relevant knew of Assailant's prior criminal behavior of physical and sexual assault.

53.    The physical and sexual assault took place at the Bobcat Village at Texas State University.

54.    Jane Doe reported the sexual assault two days later to a physician at Central Texas Medical Center.

55.    Jane Doe reported the sexual assault to University Police Department on October 4, 2019.  Photos were taken of her injuries.

56.    Jane Doe reported the physical and sexual assault to the appropriate University authorities and at all times cooperated fully with their investigation.

57.    Jane Doe's grades dropped, and she was forced to withdraw from school and move home for the fall and the following Spring.

58.    Jane Doe learned of Assailant 1's arrest not from University Police Department but because her parents called for an update.  Ten minutes later it was all over social media.  For the first time she learned that Assailant 1 had a previous arrest for sexual assault and felony possession of a controlled substance. Before the physical assault, Jane Doe had previously paid for classes, room and board. While she did not have to pay tuition when she withdrew, she was still saddled with the burden paying for room and board.

## V.

## CAUSES OF ACTION

### COUNT 1:

### VIOLATION OF TITLE IX

### 20 U.S.C. § 1681, *et seq.*

59.     The sex-based harassment articulated in this complaint was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

60.     The Defendant created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because:

    a) Plaintiff was a member of a protected class;
    b) Plaintiff was subjected to sexual harassment in the form of a sexual assault by another student;
    c) Plaintiff was subjected to harassment based on their sex; and
    d) Plaintiff was subjected to a hostile educational environment created by the Defendant's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

61.     The University violated their Removal Policy that would have prompted or required them to take affirmative action and remove a student like Assailant 1 who exhibited criminal behavior.  Had such removal taken place, the sexual assault on Plaintiff would not have occurred.

62.     The Defendant University failed to protect the Plaintiff from a known sexual predator of which they had either actual or constructive notice at the time of Plaintiff's physical and sexual assault.

63.     Plaintiff has suffered emotional distress and psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendant's deliberate indifference to her rights under Title IX.

## COUNT 2

### TEXAS TORT LAW – Negligence

64.     Defendant owed Plaintiff a duty of reasonable care.

65.     Defendant breached these duties in multiple ways including:

a.      Failing to discover, develop and/or implement basic safeguards designed to prevent and/or minimize incidents of sexual assault;
b.      Failing to monitor persons accused of sexual assault to ensure additional events did not occur;
c.      Failing to adopt and implement adequate safeguards to prevent known sexual harassment occurring on campus;
d.      Tolerating sexual assailants on campus despite reports to the highest levels of their identities;
e.      Failing to adopt education programs to promote awareness of rape, acquaintance rape, and other sex crimes;
f.      Failing to adopt and enforce institutional sanctions for sex offenses, both forcible and non-forcible;
g.      Failing to adopt and enforce procedures students should follow if they become sexual assault victims, including who should be contacted, the importance of retaining evidence, and to whom the offense should be reported;
h.      Failing to notify sexual assault victims about counseling services and options for changing academic schedules and living arrangements in the wake of a sexual assault;

     i.     Failing to put in place an accurate routine procedures to notify the campus community about serious criminal activity that is likely to be a threat to students and employees;

     j.     Failing to adopt and periodically review procedures to make sure they are adequate to address complaints of serious sexual misconduct.

     k.     Failing to make the goal of protecting the campus community from sexual assaults and harassment an integral part of the institution's day-to-day mission of providing a safe and secure learning and working environment.

     l.     Failing to follow their own Removal Policy which would have prompted or required them remove a student like Assailant 1 who exhibited criminal behavior.

66.   The above enumerated breaches of duties were the proximate cause of substantial injury and damage Plaintiff, as more specifically described herein.

67.   These damages include, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; Plaintiff has suffered and continues to suffer spiritually. Plaintiff was prevented and will continue to be prevented from performing her daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

## COUNT 3

## TEXAS LAW - Breach of Contract

68.   Plaintiff had valid enforceable contract with Defendant as an academic enrollee and also as a resident living in on-campus housing.

69.   Defendant breached this contract in failing to adequately warn and/or protect Plaintiff of the dangerous sexual assault conditions on campus.

70.   Defendant also breached this contract by failing to provide an adequately safe living and educational environment for Plaintiff.

71.   As a result of these breaches of contract, Plaintiff suffered damages which were foreseeable, and for which recovery is now requested.

## COUNT 4

## PUNITIVE DAMAGES

72.   Defendant's actions and omissions, as explained above, were done with such deliberate and reckless indifference to and disregard for the federally protected rights and safety of Plaintiff that Defendant should be held liable for exemplary damages.

## VII.

## <u>ATTORNEYS FEES</u>

73.    Plaintiff request award of their reasonable and necessary attorneys' fees and expenses for this action.  *See, e.g.*, 42 U.S.C. §§ 1983 & 1988.  Plaintiff also requests reasonable and necessary attorneys' fees for their breach of contract claim.

## VIII.

## <u>JURY DEMAND</u>

74.    Plaintiff asserts her rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## IX.

## <u>RELIEF REQUESTED</u>

75.    For the foregoing reasons, the Plaintiff respectfully requests that the Court enter judgment against Defendant consistent with the relief requested herein, and for any and all relief Plaintiff may show she is entitled including actual damages, compensatory damages, nominal damages, punitive damages, court and litigation costs, expert fees, attorney's fees and statutory interest.

Dated this 23rd day of June , 2021.

Respectfully submitted,

_/s/  Mark W. Long_____
Mark W. Long
State Bar No.  12521950
508 Powell Street
Austin, Texas 78703
Telephone: (512) 913-6165
Facsimile: (512) 515-9355
mark@marklong.com

**BRAZIL & DUNN, L.L.P.**

K. Scott Brazil
State Bar No. 02934050
Chad W. Dunn
State Bar No. 24036507
13231 Champion Forest Dr., Suite 406
Houston, Texas 77069
Telephone: (281) 580-6310
Facsimile: (281) 580-6362
scott@brazilanddunn.com

ATTORNEYS FOR PLAINTIFF