IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JANE DOE, | § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | 1:21-CV-559-RP |
| TEXAS STATE UNIVERSITY, | | |
| Defendant. | | |

**ORDER**

Before the Court is Defendant Texas State University's ("TSU") Motion to Dismiss Plaintiff's First Amended Complaint. (Dkt. 16). Having considered the parties' briefs, the record, and the relevant law, the Court finds that the motion should be granted.

**I. BACKGROUND**

This case concerns the sexual assault of Plaintiff Jane Doe ("Doe")[1] by a TSU student ("Assailant 1") and TSU's alleged mishandling of allegations against Assailant 1 leading up to the assault. Doe enrolled at TSU in August 2019. (Am Compl., Dkt. 15-1, at 14). On August 17, 2019, Assailant 1 sexually assaulted another TSU student—not Doe. (*Id.* at 15). On August 29, 2019, Assailant 1 was arrested by the Hays County Sheriff's Office for felony possession of a controlled substance unrelated to the sexual assault. (*Id.*). He was assigned a TSU tracking number at this time. (*Id.*). On September 28, 2019, Doe was physically and sexually assaulted by Assailant 1 at the Bobcat Village at TSU. (*Id.* at 15–16). Two days later, Doe reported the assault to a physician at Central Texas Medical Center. (*Id.* at 16). On October 3, 2019, Assailant 1 was arrested for the first sexual assault committed in August. (*Id.* at 15). Doe claims TSU was the investigatory agency. (*Id.*).

---

[1] The Court previously granted Doe's unopposed motion to proceed pseudonymously. (Mot., Dkt. 11).

1

On October 4, 2019, Doe reported her assault to the University Police Department and photos were taken of her injuries. (*Id.* at 16). TSU's Title IX coordinator investigated the assault on Doe and concluded Assailant 1 committed sexual violence against her. (*Id.* at 15). Doe cooperated with TSU's investigation. (*Id.* at 16). TSU's committee affirmed the finding and sustained his removal from the school. (*Id.*). Doe claims TSU knew of Assailant 1's "prior criminal behavior of physical and sexual assault" "at time relevant." (*Id.*). Assailant 1 was arrested and charged with sexually assaulting Doe on October 21, 2019; charges were pending as of September 2021. (*Id.* at 10).

Doe learned of Assailant 1's arrest when her parents called for an update; minutes later the story was on social medial. (*Id.* at 16). Doe did not learn of Assailant 1's prior arrests until this time. (*Id.*). Doe's grades dropped following the assault leading to her withdrawal from school. (*Id.*). She moved home for the fall 2019 and spring 2020 semesters. (*Id.*). Although she did not pay tuition for those semesters, she was still required to pay for room and board. (*Id.*).

Doe claims that before she was assaulted, TSU "had a history of significantly underreporting the number of sexual assaults on its flagship campus," as required by the Clery Act. (*Id.* at 10). At the time of the assault, TSU's Sexual Misconduct Policy and Procedures provided, "When an incident of sexual misconduct is reported, the component will consider interim measures while the incident is investigated and adjudicated." (*Id.*). "Temporary Withdrawal or Suspension from the Component" was listed as a possible interim measure. (*Id.* at 11). Doe states that TSU took no interim measures against Assailant 1 following the August 17, 2019 assault and before she was assaulted. (*Id.*). She argues that the first assault combined with the drug arrest warranted Assailant 1's immediate removal from campus under TSU's sexual misconduct policy. (*Id.*, *id.* at 12). She further argues that TSU's "failure to follow its own sexual misconduct policy was a direct, producing and proximate

cause" of her assault. (*Id.* at 11).² She claims that TSU failed to protect her from a "known sexual predator" and created a heightened risk of sexual assault for Doe and other students by its failure to act after becoming aware of Assailant 1's conduct. (*Id.* at 12–13).

Doe filed this action on June 23, 2021, (Compl., Dkt. 2), and amended her complaint on September 10, 2021, (Am. Compl., Dkt. 15-1). Doe brings claims for violation of Title IX, 20 U.S.C. § 1681, et seq., and for negligence and breach of contract under Texas common law. (*Id.* at 17–20). On October 10, 2021, TSU filed the instant motion, seeking dismissal of all claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss, Dkt. 16). Doe responded on October 19, 2021, (Resp., Dkt. 17), and TSU replied on October 25, 2021, (Reply, Dkt. 18). For the reasons discussed below, the Court will grant the motion but allow Doe to amend her complaint once more.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the [plaintiffs'] grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a

---

² Doe also cites TSU's current sexual misconduct policies, which were amended in 2020. (*Id.* at 11–12). Because these policies were not in place at the time of the events in question, the Court does not consider their content.

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### B. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any

4

one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### III. DISCUSSION

### A. Title IX Claim

TSU seeks dismissal of Doe's Title IX claim under Rule 12(b)(6). The Supreme Court has held that a school is liable in damages for a Title IX violation only when it "itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of . . . harassment of which it had actual knowledge." *Davis Next Friend LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 642 (1999) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283 (1998)). More is required than a finding that the school "should have known" about the misconduct. *Id.* Further, the Supreme Court has clarified that liability may attach when the harasser is student rather than a teacher, but that the same actual knowledge standard applies. *Davis*, 526 U.S. at 643.

TSU argues that Doe's claim should be dismissed because she failed to plead that an appropriate TSU official had actual knowledge of Assailant 1's first assault prior to Doe's assault. (Am. Compl., Dkt. 15-1, at 6). To award damages, the Court must find "an official of the recipient entity with authority to take corrective action to end the discrimination who is advised of a Title IX violation . . . refuse[d] to take action to bring the [university] into compliance." *Gebser*, 524 U.S. at 290. TSU states that Doe's amended complaint identifies neither an appropriate individual nor facts sufficient to demonstrate actual knowledge of the risk posed by Assailant 1. Doe counters that she has alleged sufficient facts to establish actual knowledge on the part of TSU, although she does not point to any individual who may have held the requisite knowledge. (Resp., Dkt. 17, at 10). She points to two specific allegations in support: that TSU had investigated Assailant 1's first assault and

that Assailant 1 was arrested on a drug charge and assigned a TSU tracking number before assaulting Doe. (*Id.*).

There are several difficulties with Doe's argument. First, the fact that TSU investigated Assailant 1's first assault, absent temporal constraints, cannot itself fulfill the actual knowledge requirement. The Amended Complaint alleges only, "The University had actual knowledge of the prior assault because they were the investigatory agency." (Am. Compl., Dkt. 15-1, at 15). But no facts are alleged placing this investigation before Doe's assault. Indeed, Assailant 1 was not arrested for the first assault until October 3, 2019, several days after Doe was assaulted. (*Id.*). As presented, the allegations regarding Assailant 1's arrest for the first assault and the conclusory statements regarding an investigation cannot suffice to demonstrate actual knowledge. Similarly, the fact that Assailant 1 was arrested on an unrelated drug charge and had been assigned a tracking number—the function of which remains unexplained—sheds no light on any information about him related to sexual misconduct that may or may not have been in TSU's possession. More fundamentally, Doe has not identified any individual who had the personal knowledge she ascribes to TSU. Elsewhere, Doe mentions an unnamed Title IX coordinator, but only in connection with the investigation of her own assault. (*Id.* at 9, 15). Thus, Doe has not identified an individual whose inaction led to her assault, and so she has not met the requirements to state a Title IX claim.

TSU further argues that Doe fails to state a claim for deliberate indifference for TSU's failure to take interim measures against Assailant 1 prior to her assault. (Am. Compl., Dkt. 15-1, at 8). A school is "deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. A school "is liable for its own lack of corrective action rather than the actions of the offending student." *Watkins v. La Marque Indep. Sch. Dist.*, 308 F. App'x 781, 783 (5th Cir. 2009).

Doe argues that TSU violated its sexual misconduct policy by failing to take interim measures, namely removal from campus, after Assailant 1's first assault. (Am. Compl., Dkt. 15-1, at 11). Doe cites the policy provision stating that the school "will consider interim measures while [an] incident is investigated and adjudicated." (*Id.* at 10). TSU correctly notes that this policy, on its face, appears to be merely permissive and not a mandatory duty taken on by the school. Therefore, TSU could not have violated a policy by failing to take a discretionary action. (Mot. to Dismiss, Dkt. 16, at 8). Moreover, the Supreme Court has explained that a school's failure to promulgate a grievance procedure does not constitute actionable discrimination as prohibited by Title IX. *Gebser*, 524 U.S. at 292. Rather, the facts alleged suggest that TSU followed its own policies by investigating Doe's report and taking action against Assailant 1. (Am. Compl., Dkt. 15-1, at 15–16). These facts are far from sufficient to establish the actual knowledge on the part of a TSU official necessary to establish deliberate indifference.

The Court finds that Doe has failed to allege facts sufficient to state a claim under Title IX. Doe has failed to identify an appropriate individual who knew of the risk of sexual assault posed by Assailant 1 and yet failed to act to protect Doe, or to allege facts to support any other basis upon which the Court could find deliberate indifference by TSU. Accordingly, the Court must grant TSU's motion to dismiss Doe's Title IX claim. However, as explained below, the Court will grant Doe leave to amend to cure these defects.

## B. State Law Claims

TSU separately seeks dismissal of Doe's state law breach of contract and negligence claims for lack of subject matter jurisdiction under Rule 12(b)(1). (Mot. to Dismiss, Dkt. 16, at 4). TSU invokes its sovereign immunity to argue the Court lacks jurisdiction to hear these claims. (*Id.*). Without deciding the issue of immunity, the Court notes that, having dismissed the Title IX claim— the only one in this action over which this Court has original jurisdiction—there is an antecedent

7

jurisdictional question. Neither party has raised this precise jurisdictional issue, but the Court is required to "satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); *see Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997) ("[B]efore proceeding with a case, federal trial and appellate courts have the duty to examine the basis for their subject matter jurisdiction, doing so on their own motion if necessary.").

Doe claims this Court has jurisdiction to hear her state law breach of contract and negligence claims based on the Court's supplemental jurisdiction as provided by 28 U.S.C. § 1367(a). Under that statute, a district court may exercise supplemental jurisdiction over state claims that do not independently come within the court's jurisdiction so long as they "form part of the same case or controversy" as the claims which do fall within the court's original jurisdiction. *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 293 (5th Cir. 2010); 28 U.S.C. § 1367(a). Under § 1367(a), the question is whether the supplemental claims are so related to the original claims that they derive from a "common nucleus of operative fact." *Energy Mgmt. Servs, LLC v. City of Alexandria*, 739 F.3d 255, 259 (5th Cir. 2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 351 (2006)).

Here, the Court has dismissed Doe's Title IX claim, which undisputedly arises under federal law and provides the basis for her assertion of supplemental jurisdiction over the state law claims. (Am. Compl., Dkt. 15-1, at 5). Absent a live federal claim, there is no basis upon which Doe's invocation of supplemental jurisdiction may now rest. Although automatic dismissal of state law claims is not mandatory in such circumstances, the "'general rule' is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Smith v. Amedisys Inc.*, 298 F.3d 434, 446–47 (5th Cir. 2002) (quoting *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)).

8

In determining whether to exercise it discretionary supplemental jurisdiction, the Court follows the provisions of 28 U.S.C. § 1367(c)[3] and is mindful of the equitable factors of "judicial economy, convenience, fairness, and comity." (*Id.*). Given the current predominance of state law claims in the action, the dismissal of all federal claims, the lack of exceptional circumstances, and the early stage of this litigation, the Court finds that the relevant factors weigh against retaining the state law claims on their own. The Court thus declines to exercise its supplemental jurisdiction over the remaining state law claims. *See W.W. San Antonio Investments, L.P. v. City of San Antonio*, CIVASA-98-CA-0926OG, 1999 WL 33290631, at *3 (W.D. Tex. Sept. 8, 1999) (citing *Batiste,* 179 F. 3d, at 227–28). Therefore, without expressing any opinion as to the issue of TSU's sovereign immunity, the Court will grant TSU's motion to dismiss Doe's state law breach of contract and negligence claims under rule 12(b)(1).

## IV. LEAVE TO AMEND

Doe has requested leave to amend in the event that the Court grants TSU's motion. (Resp., Dkt. 17, at 20). TSU opposes granting leave to amend because it claims amendment would be futile. (Reply, Dkt. 18, at 4). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002) (citation and internal quotation marks omitted). "[A]bsent a 'substantial reason' such as undue delay, bad faith, dilatory motive, repeated failures to cure deficiencies, or undue prejudice to the opposing party, 'the discretion of the district court is not broad enough to

---

[3] 28 U.S.C. § 1367(c) states: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

9

permit denial.'" *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)).

There is no substantial reason to deny leave to amend here. Doe has once before amended her complaint, (Am. Compl., Dkt. 15), but that alone does not render a second amendment futile. Rather, the Court finds amendment will be beneficial to determine whether a plausible Title IX claim exists—and may form the basis for supplemental jurisdiction in connection with the state law claims—or whether the action should proceed no further. Specifically, Doe may amend her Title IX claim to (1) identify a TSU official who had actual knowledge of Assailant 1's assaultive behavior before Doe's assault and (2) to describe the facts that may demonstrate TSU's actual knowledge. Should Doe cure the defects with her Title IX claim in her amended complaint, she may also establish the Court's jurisdiction to hear her state law claims and may amend those claims accordingly.

## V. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that TSU's Motion to Dismiss Plaintiff's First Amended Complaint, (Dkt. 16), is **GRANTED**. Doe's Amended Complaint, (Dkt. 15-1), is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Doe may file her amended complaint in accordance with this Order no later than **August 4, 2022**.

**SIGNED** on July 28, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE